U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

2020 DEC -2  PM 2: 56

CLERK

BY _____ *Uhw*
DEPUTY CLERK

| | | |
|---|---|---|
| SAMUEL KERSON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. _____ |
| | : | |
| v. | : | **COMPLAINT**  2:20-cv -202 |
| | : | |
| VERMONT LAW SCHOOL, INC. | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT AND JURY DEMAND

Plaintiff SAMUEL KERSON ("Kerson" or "Plaintiff"), by his undersigned attorneys,

alleges for his complaint herein against Defendant VERMONT LAW SCHOOL, INC. ("VLS" or

"Defendant"), as follows:

## NATURE OF THE ACTION

1.      This action arises under the Visual Artist Rights Act (VARA), 17 U.S.C. § 106A,

*et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  This claim arises from

VLS's stated plan to destroy, distort, mutilate or otherwise modify two murals, each 8' x 28',

entitled *Vermont, The Underground Railroad* and *Vermont and the Fugitive Slave* (the

"Murals").  The Murals were painted in 1994 by Mr. Kerson on two walls in Chase Hall, a

building located on the VLS campus in South Royalton, Vermont and have been on display there

since.

2.      The Murals which depict Vermont's efforts to help slaves seeking freedom in the

years before the civil war, achieved nationwide recognition. Notwithstanding such recognition,

in July of 2020, VLS announced that because of some complaints by students, who apparently

1

found the murals "offensive", it was going to paint over the Murals. When Kerson learned of this, he advised VLS that he did not consent to destruction of his art and asserted his rights under VARA. Nevertheless, VLS, purporting to give notice to Kerson to remove his art, has informed Kerson that it intends to permanently cover the murals with acoustic tiles.

3.      The Visual Artists Rights Act of 1990 (VARA), however, protects the rights of artists like Kerson, safeguarding their works from "distortion, mutilation, or other modification. . . which would be prejudicial to [their] honor or reputation." 17 U.S.C. § 106A(a)(3)(a). It further protects works of "recognized stature"—including murals in buildings in particular—from intentional or negligent "destruction." Id. § 106A(a)(3)(B). Defendant's plans threaten Kerson's rights under VARA. To protect the Murals from mutilation or destruction, and thereby to ensure the future of one of his most significant achievements, Kerson brings this action for declaratory and injunctive relief

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under VARA 17 U.S.C. § 106A, *et seq.* and the Declaratory Judgment Act 28 U.S.C. §§ 2201 and 2202.

5.      This Court has personal jurisdiction over the Defendant because the Defendant resides in this judicial district.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendant resides in this judicial district, the events or omissions giving rise to the claim occurred in this judicial district, and the property that is the subject of the action is situated in this district.

2

## THE PARTIES

7.     Plaintiff Kerson is a citizen of the United States and a resident of Quebec, Canada. He is the creator of the visual artistic works described as the Murals, which are the subject matter of this action.

8.     VLS is a Vermont non-profit corporation having a business address at 164 Chelsea Street, South Royalton 05068. Chase Hall, where the Murals are located, is part of the VLS campus.

## STATUTORY BACKGROUND

9.     Congress passed the Visual Artist Rights Act (VARA) in 1990, as an amendment to the Copyright Act. VARA extends to visual artists the legal protection of their moral rights of attribution and integrity. 17 U.S.C. § 106A. It defines a work of visual art as "a painting, drawing, print, or sculpture, existing in a single copy," or "in a limited edition of 200 copies or fewer." Id. § 101.

10.     Since 1990, artists have had the right to protect their works from "any intentional distortion, mutilation, or other modification of that work which would be prejudicial to his or her honor or reputation." Id. § 106A(a)(3)(A).

11.     Works of "recognized stature" are further protected from "destruction," whether "intentional or grossly negligent." Id. § 106A(a)(3)(B).

12.     The Act's protection expressly extends to permanent murals—that is, to works of recognized stature that have been "incorporated in or made part of a building in such a way that removing the work from the building will cause the destruction, distortion, mutilation, or other modification of the work." Id. § 113(d)(1)(A). For murals incorporated in or made part of a building after VARA's enactment in 1990, this protection shall apply unless the artist and the

3

building owner have executed a "written instrument" that "specifies that installation of the work may be subject to destruction, distortion, mutilation, or other modification, by reason of its removal." Id. § 113(d)(1)(B).

## FACTUAL BACKGROUND

13.     Kerson is a well-regarded multi-disciplinary visual artist, whose work has been displayed world-wide. Collections of Kerson's works have been acquired by such esteemed institutions as the Library of Congress, the National Archives of Canada, the New York Public Library and numerous college and university libraries. During his career, now spanning over 50 years, Kerson has created and exhibited numerous works of visual art, co-founded the Dragon Dance Theatre, and served as Artist in Residence in institutions located in Europe.

14.     Kerson has achieved particular recognition in creating murals. In addition to the Murals at issue in this action, Kerson's murals had been displayed in the Vermont State Human Services Building and in Masaya, Nicaragua.  In addition, his paintings were displayed in a curated art exhibit in the halls of the Vermont Supreme Court.

15.     Kerson's works, including the Murals, are the subject of, or included, in artist books and portfolios, maintained in the collection of libraries in the United States, Canada, and Europe, including the British Library, London and the Bibliothèque Nationale de France, Paris.

16.     Kerson was the winner of the 2016 René Caccan Public Prize, Belgium.

17.     Currently, Kerson is finalizing the sale of two of his acrylic paintings to the city of Trois-Rivières, Quebec, Canada.  One of these paintings refers to the current Underground Railroad in France.

4

18.     In 1993, Kerson conceived of the idea of creating two murals commemorating

Vermont and its participation with the Underground Railroad helping slaves fleeing from the

South.

19.     In March of 1993, VLS determined to have the murals placed in Chase Hall of its

campus. VLS wrote to Kerson

> We are delighted that you have chosen VLS as the site for your mural, The
> Underground Railroad, Vermont and the Fugitive Slave. We agree that the mural
> will be painted on the walls of the upper level of the Jonathan B. Chase
> Community Center...

20.     Based on this agreement by VLS, Kerson obtained funding for the project from

the Puffin Foundation and with the assistance of other artists, working under his supervision,

created the Murals.

21.     The Murals were painted with acrylic paint directly onto the sheet rock walls of

Chase Hall.

22.     The Murals depict the history of slavery including the capture and shipment of

Africans to the Americas, the selling of captured humans in slave markets, the slave's work

condition, the suppression of African culture, abolition, resistance to slavery, featuring important

historical figures, and the Underground Railroad.

23.     Upon their completion, in or about 1994, VLS publicly announced the display of

the Murals and sponsored an opening ceremony celebrating the Murals. Among the attendees of

the ceremony was renowned civil rights attorney Florynce Kennedy.

24.     The Murals achieved nationwide recognition. A book entitled *The Underground

Railroad, Vermont and the Fugitive Slave* was published, containing images of scenes depicted

in the Murals. The book was purchased by and is part of the collection of the libraries of the

5

University of Arizona, the University of Colorado, the University of Vermont, VLS, St.

Michael's College, Dartmouth College, Middlebury College, as well as the New York Public

Library, the Boston Public Library, the Newark Public Library, and the Dennos Museum, located

on the campus of Northwestern Michigan College.

25.     Since 1994, the Murals have been displayed at Chase Hall.

26.     In early 2020 VLS received complaints from some students about the Murals and,

thereafter, determined to destroy the Murals.

27.     In or about the beginning of July 2020, VLS publicly announced that it planned

"to paint over" the Murals.

28.     VLS gave no notice to Kerson of its intention to paint over the Murals and he only

learned thereof when one of the complaining students contacted Kerson requesting that Kerson

join the demand to take down the Murals.

29.     At the time it announced its intention to paint over the Murals, VLS acted in

complete ignorance and disregard of Kerson's rights under VARA.

30.     Thereafter, on August 5, 2020, VLS finally acknowledged the existence of VARA

and Kerson's rights thereunder and sent him notice that he had 90 days to remove the Murals

and, failing that, VLS would remove or cover the Murals.

31.     During the 90-day period, VLS gave Kerson access to the Murals so that he could

inspect them and determine what would be required to remove the Murals and the impact that

such undertaking would have on the Murals.

32.     As a result of the inspection of the Murals, by carpenters familiar with the

hanging and displaying of art, it was determined that the Murals were painted directly onto the

sheet rock affixed to the building and incorporated into the walls of Chase Hall in such a manner

6

that any effort to remove them would require disfiguring the Murals and cutting them into sections.

33.     The inspection further determined that any attempt to remove the Murals would cause significant damage to the Murals and destroy, distort, mutilate or otherwise modify them.

34.     Thereafter, on or about October 8, 2020, Kerson's counsel advised VLS that removing the Murals would destroy them, and that Kerson could not be required to remove the Murals, and that he did not consent to VLS removing or covering the Murals.

35.     Efforts to find an acceptable resolution by counsel for VLS and Kerson were unsuccessful and, on November 18, 2020, counsel for VLS advised that

> My understanding is that the current intention [of VLS] is to cover the murals with acoustical panels that will be firmly affixed to the wall structure.

## CLAIM FOR RELIEF

### (Visual Artists Rights Act and Declaratory Judgment Act)

36.     The Murals are paintings that constitute a "work of visual art" as defined by 17 U.S.C. § 101. Kerson holds a copyright to the Murals, and the work is thus a copyrightable subject matter.

37.     The Murals have been the subject of public acclaim since they were created in 1994 and are therefore works of "recognized stature" under VARA. 17 U.S.C. § 106A(a)(3)(B).

38.     Kerson's reputation as a mural artist, both in Vermont and in the national and world-wide arts community, will be irreparably harmed if his most notable work is distorted, mutilated, modified, or destroyed without his consent. The destruction of the Murals would be "prejudicial" to Kerson's "honor or reputation." 17 U.S.C. § 106A(a)(3)(A).

7

39.     The Murals have been incorporated into or made a part of Chase Hall, a building on the VLS campus.

40.     The Murals were created in or about 1993-1994 after the enactment of VARA and Kerson has not executed or signed any written statement waiving his rights under the Visual Artists Rights Act or allowing his work to be in any manner destroyed, distorted, mutilated, or modified through removal. 17 U.S.C. § 106A(e), § 113(d)(1)(B).

41.     Kerson has the right under 17 U.S.C. § 106A(a)(3) to prevent the destruction, distortion, mutilation, or modification of The Murals.

42.     As a work of visual art incorporated in a building, the removal of the Murals would destroy, disfigure, mutilate or otherwise modify the Murals.

43.     VLS cannot remove or cover the Murals in contravention of Kerson's rights under VARA

44.     VLS has acted, or plans to act, intentionally and in willful disregard of Kerson's rights under VARA.

45.     Because Defendant has threatened and continues to threaten to violate Kerson's rights under VARA, there is an actual controversy between the parties within this Court's jurisdiction and a need for this Court to declare the rights and legal relations of the parties under VARA.

46.     Kerson is entitled to temporary preliminary and injunctive relief barring VLS from removing, covering or destroying, disfiguring, mutilating or otherwise modifying the Murals.

47.     Kerson is entitled to actual and statutory damages to the extent that VLS has destroyed, disfigured, mutilated or otherwise modified the Murals.

8

48.   Kerson has no other adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Kerson respectfully requests that this Court:

A. Declare that,

1.  Plaintiff, an established artist, has the right under the Visual Artists Rights Act to prevent any intentional or negligent destruction, distortion, mutilation, or other modification of the Murals for his lifetime;

2.  the Murals are works of visual art of recognized stature.

3.  removal of the Murals would destroy, disfigure, mutilate or otherwise modify the Murals.

4.  VLS cannot under VARA remove or cover the Murals.

5.  to the extent that VLS has destroyed, disfigured, mutilated or otherwise modified the Murals, Kerson is awarded actual damages, as this Court determines, or, in the alternative,

6.  to the extent that VLS has destroyed, disfigured, mutilated or otherwise modified the Murals, it has done so intentionally and in willful disregard of Kerson's rights under VARA and that Kerson be awarded statutory damages in the amount of $150,000 for each mural.

B. Granting and/or awarding Kerson,

1.  a temporary, preliminary and permanent injunction enjoining VLS, its agents, attorneys, and employees, and all those acting in concert with them, from taking any action with regard to the Murals that will remove, cover, destroy, disfigure, mutilate or otherwise modify the Murals.

2.  a monetary judgment against VLS for such actual and/or statutory damages as this
    Court may determine.

3.  reasonable costs, expenses and attorney's fees, and such other and further relief as
    the Court considers just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff SAMUEL KERSON demands a trial by jury on all issues so triable.

**PLAINTIFF,
SAMUEL KERSON**

By: _____

Steven J. Hyman
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Telephone (212) 448-1100
Facsimile (212) 448-0066
shyman@mclaughlinstern.com
*Attorneys for Plaintiff*

Richard I. Rubin
RUBIN, KIDNEY, MYER & VINCENT
237 North Main Street, Suite 3
Barre, Vermont 05641
Telephone (802) 479-2514
Facsimile (802) 479-2516
rrubin@rkmvlaw.com
*Attorneys for Plaintiff*

Date:   November 30, 2020