# UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

SAMUEL KERSON,          )
                       )
     Plaintiff,        )
                       )
     v.              )     CIVIL ACTION NO.  2:20-CV-00202-CR
                       )
VERMONT LAW SCHOOL, INC.,   )
                       )
     Defendant.     )

## MOTION OF PLAINTIFF SAMUEL KERSON FOR A PRELIMINARY INJUNCTION

Steven J. Hyman (2097)
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Phone (212) 448-1100
Fax (212) 448-0066
shyman@mclaughlinstern.com
*Attorneys for Plaintiff*

Richard I. Rubin (7012)
RUBIN, KIDNEY, MYER & VINCENT
237 North Main Street, Suite 3
Barre, Vermont 05641
Phone: (802) 479-2514
Fax: (802) 479-2516
rrubin@rkmvlaw.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ ii

I.   PRELIMINARY STATEMENT ................................................................................ 1

II.  STATEMENT OF FACTS ......................................................................................... 2

    A.  THE MURALS ARE A WORK OF RECOGNIZED STATURE CREATED BY
        A NOTEWORTHY ARTIST ............................................................................... 2

    B.  VLS HAS PUBLICLY STATED THAT IT INTENDS TO IRREVOCABLY
        COVER UP AND/OR PAINT OVER THE MURALS ...................................... 5

    C.  THE MURALS ARE INCORPORATED IN OR MADE PART OF A BUILDING IN
        SUCH A WAY THAT REMOVAL WILL CAUSE THE DESTRUCTION,
        DISTORTION, OR MUTILATION OF THE WORKS...................................... 5

III. ARGUMENT ............................................................................................................... 6

        A.   LEGAL STANDARD................................................................................ 6

        B.   KERSON SATISFIES THE REQUIREMENTS FOR A PRELIMINARY
            INJUNCTION............................................................................................ 7

            1.  Kerson Will Succeed on The Merits .............................................. 7

                a.  VARA Controls the Dispute .................................................. 8
                b.  As Author of the Murals Kerson Has the Rights Conferred by VARA....... 9
                c.  The Murals are Works of Recognized Stature ........................... 10
                d.  VLS's Stated Plan to Permanently Cover the Murals will be Prejudicial to
                    Kerson's Honor or Reputation ............................................... 12

            2.  Kerson Will Suffer Irreparable Harm if the Murals are Permanently Covered
               with Acoustic Panels or Removed .................................................. 13

            3.  The Balance of Equities Tips in Favor of Maintaining the Murals in their
               present Condition ........................................................................... 14

            4.  The Public Interest is Benefitted in Maintaining the Murals ........................... 14

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

Cases

*Abdul Wall v. Coughlin*, 754 F.2d 1015 (2d Cir. 1985) ....................................................8

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887 (2d Cir. 2015)..................................6, 8

*BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp 2d 185 (S.D.N.Y. 2000) ........................8

*Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239 (1903) ................................................11

*Bourne Co v. Tower Records, Inc..*, 976 F.2d 99 (2d Cir. 1992)....................................................13

*Carter v. Helmsley-Spear*, 71 F.3d 77 (2d Cir. 1995),
*cert. denied*, 517 U.S. 1208 (1996)  ...............................................................................8, 11, 12

*Carter v. Helmsley-Spear, Inc.*, 861 F. Supp. 303 (S.D.N.Y. 1994), *rev'd on other grounds*,
71 F.3d 77 (2d Cir. 1995)....................................................................................................12

*Castillo v. G&M Realty,* 950 F.3d 155 (2d Cir. 2020),
*cert. denied*, 141 S. Ct. 363 (2020) .................................................................7, 10, 11, 12

*Martin v. City of Indianapolis,* 192 F.3d 608 (7th Cir. 1999) ......................................................11

*Oneida Nation of New York v. Cuomo*, 645 F.3d 154 (2d Cir. 2011)..........................................6

*Pollara v. Seymour*, 344 F.3d 265 (2d Cir. 2003)........................................................................11

*Video Trip Corp. v. Lighting Video, Inc.* 866 F.2d 50. (2d Cir. 1989)...........................................13

Statutes

FRCP Rule 65 ...................................................................................................................... 1

17 U.S.C. §101......................................................................................................................8

17 U.S.C. §106A................................................................................................................2, 8, 13

17 U.S.C. §106A(a)(3).......................................................................................................10

17 U.S.C. §106A(a)(3)(A) ...............................................................................................8, 10, 12

17 U.S.C. §106A(a)(3)(B) ................................................................. 8, 10, 12

17 U.S.C. §106A(e)(2) ......................................................................... 10

17 U.S.C. §113(d) ............................................................................... 13

17 U.S.C. §113(d)(1)(A) ...................................................................... 9

17 U.S.C. §113(d)(1)(B) ...................................................................... 9

17 U.S.C. §113(d)(2) ............................................................................ 9

28 U.S.C. §2201 ................................................................................... 2

28 U.S.C. §2202 ................................................................................... 2

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| **SAMUEL KERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.  2:20-CV-00202-CR** |
| | ) | |
| **VERMONT LAW SCHOOL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION OF PLAINTIFF SAMUEL KERSON FOR A PRELIMINARY INJUNCTION

Plaintiff Samuel Kerson ("Plaintiff" or "Kerson") moves for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to maintain the *status quo* until a resolution of this action by enjoining Defendant Vermont Law School ("Defendant" or "VLS") from its stated plan to permanently and irrevocably cover up or remove two murals entitled *The Underground Railroad, Vermont and the Fugitive Slave* (the "Murals") painted by Kerson in 1993 on two walls in Chase Hall, a building located on the VLS campus in South Royalton, Vermont, where they have been on display for more than 25 years.

## MEMORANDUM

## I.   PRELIMINARY STATEMENT

After receiving complaints from some students about the Murals in early 2020, VLS, in or about the beginning of July 2020, publicly announced that it planned "to paint over" the Murals.  Subsequently, on November 18, 2020, counsel for VLS advised that

> My understanding is that the current intention [of VLS] is to cover the murals with acoustical panels that will be firmly affixed to the wall structure.  Karen McAndrew Email dated November 18, 2020, Exhibit 4.

Kerson filed this action on December 2, 2020, asserting his rights under the Visual Artist Rights Act (VARA), 17 U.S.C. § 106A, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, seeking, *inter alia*, an injunction preventing any intentional or negligent destruction, distortion, mutilation, or other modification of the Murals (hereinafter "destruction of the Murals" or "destroy the Murals") during his lifetime.

After filing and serving the complaint as required by the Local Rules of this Court, Kerson, through Richard Rubin, Esq., made a good faith attempt to obtain VLS's agreement to the requested relief herein, *e.g.*, a preliminary injunction retaining the *status quo* until resolution of this action. VLS rebuffed Kerson's good faith efforts.

Injunctive relief is now necessary because Kerson faces the very real risk that VLS will proceed with its stated plans to destroy the Murals. If permitted to proceed with its plans, the *res* that forms the basis for this action will be irrevocably lost. To protect himself and the Murals from VLS's plans, Kerson seeks limited and temporary injunctive relief to preserve the *status quo* pending a disposition on the merits.

## II.  STATEMENT OF FACTS

The facts relevant to this Motion are summarized below and set out in the supporting Declarations.

### A.  THE MURALS ARE A WORK OF RECOGNIZED STATURE CREATED BY A NOTEWORTHY ARTIST

Kerson is recognized as a pre-eminent artist who has spent his entire career in the struggle for social justice for all people. He uses art and performance to engage people in building vibrant multicultural communities around the world. The work associated most closely with Kerson is the Murals that are the subject of this action. Since he created the Murals, they

have been recognized as presenting a powerful indictment of the horrors of slavery and a celebration of the struggle against slavery and its aftermath.

During his career, now spanning over 50 years, Kerson has created and exhibited numerous works of visual art, co-founded the Dragon Dance Theatre, and served as Artist in Residence in institutions located in Europe.  Kerson was the winner of the 2016 René Carcan Public Prize, Belgium.  Currently, Kerson has finalized the sale of two of his acrylic paintings, done in the style of the Murals, to the city of Trois-Rivières, Quebec, Canada.  Kerson Declaration, Exhibit 1 at ¶¶ 9, 22.

Kerson has achieved particular recognition in creating murals.  In addition to the Murals at issue in this action, Kerson's murals had been displayed in the Vermont State Human Services Building and in Masaya, Nicaragua.  In addition, his paintings were displayed in two art exhibits in the halls of the Vermont Supreme Court curated by Marilyn Skoglund.  Collections of Kerson's works have been acquired by such esteemed institutions as the Library of Congress, the National Archives of Canada, the New York Public Library, and numerous college and university libraries.  *Id.* at ¶ 10.

Kerson's works also are the subject of, or included in, artist books and portfolios maintained in the collections of libraries in the United States, Canada, and Europe including the British Library and the Bibliothèque Nationale de France.  *Id.* at ¶ 23.

In 1993, Kerson conceived of the idea of creating two murals commemorating Vermont and its participation with the Underground Railroad helping slaves fleeing from the South.  In March of 1993, VLS determined to have the murals placed in Chase Hall on its campus. VLS wrote to Kerson

> We are delighted that you have chosen VLS as the site for your mural, The Underground Railroad, Vermont and the Fugitive

> Slave. We agree that the mural will be painted on the walls of
> the upper level of the Jonathan B. Chase Community Center…
> *Id.* at ¶ 13.

Based on this agreement by VLS, Kerson obtained funding for the project, and with the assistance of other artists working under his supervision, created the Murals.  The two Murals, each measuring 8' by 24', are painted with acrylic paint directly onto the sheet rock walls of Chase Hall.  The Murals were completed in 1993.  *Id.* at ¶ 15.

The Murals depict the history of slavery including the capture and shipment of Africans to the Americas, the selling of captured humans in slave markets, the slaves' work conditions, the suppression of African culture, abolition and resistance to slavery (featuring important historical figures), and the Underground Railroad.  *Id.* at ¶ 11.

Upon their completion, VLS publicly announced the display of the Murals, and on Martin Luther King Day, proudly sponsored an opening ceremony celebrating the Murals.  Among the attendees of the ceremony was renowned civil rights attorney Florynce Kennedy.  Since 1994, the Murals have been displayed at Chase Hall.  *Id.* at ¶ 17.

The Murals achieved nationwide recognition.  Reviews appeared in the *Boston Globe* and the *Christian Science Monitor*.  Exhibit 2.

A book entitled *The Underground Railroad, Vermont and the Fugitive Slave* was later published containing images of scenes depicted in the Murals.  The book was purchased by, and is part of the collection of, the libraries of the Vermont Law School, the University of Arizona, the University of Colorado, the University of Vermont, St. Michael's College, Dartmouth College, Middlebury College, as well as the New York Public Library, the Boston Public Library, the Newark Public Library, and the Dennos Museum at Northwestern Michigan College.  Kerson Declaration at ¶ 20.  Several photographs of the murals are attached to the

Kerson Declaration.

Also attached are the Declarations of Marilyn Skoglund, who curates the art exhibits in the Vermont Supreme Court Gallery, Exhibit 5;  David Schutz, the Vermont State Curator, Exhibit 6; and Daniel Hecht, former President of the Board of the Pyralisk Arts Center and for six years, a grants panelist for the Vermont Arts Council, Exhibit 7.

These individuals are all respected in the Vermont arts community and attest both to Kerson's reputation and stature as a recognized and accomplished artist and to the respect for and stature of his murals at Vermont Law School.

**B.    VLS HAS PUBLICY STATED THAT IT INTENDS TO IRREVOCABLY COVER UP AND/OR PAINT OVER THE MURALS**

In early 2020, upon receiving complaints from some students, VLS publicly announced that it planned "to paint over" the Murals.  On August 5, 2020, VLS informed Kerson that he had 90 days to remove the Murals and, failing that, VLS would remove or cover the Murals.  VLS Letter dated August 5, 2020, Exhibit 3.  On November 18, 2020, VLS counsel advised that the current intention [of VLS] is to cover the murals with acoustical panels that will be firmly affixed to the wall structure.  Karen MacAndrew Email dated November 18, 2020, Exhibit 4. VLS has also declined to agree to postpone the permanent cover-up or other mutilation of the Murals pending the final resolution of this action.

**C.    THE MURALS ARE INCORPORATED IN OR MADE PART OF A BUILDING IN SUCH A WAY THAT REMOVAL WILL CAUSE THE DESTRUCTION, DISTORTION, OR MUTILATION OF THE WORKS**

An inspection of the Murals was conducted in late September 2020 by Daniel Hecht and Ross Calabrese, carpenters familiar with the hanging and displaying of art, to assess the feasibility of removing the Murals from the wall.  The inspection determined that the Murals are painted directly onto the sheet rock affixed to the building and incorporated into the walls of

Chase Hall in such a manner that any effort to remove them would require disfiguring the Murals and cutting them into approximately twenty (20) sections.  The inspection further determined that any attempt to remove the Murals would cause permanent, significant damage to the Murals, in effect destroying them.  Specifically, the removal of each section would destroy areas of the Murals 1" to 3" in width along each seam of each section.  Moreover, each screw holding the drywall to the stud wall will have to be removed, causing further damage.  In total, there will be 176 linear feet of cut edge on each of the two Murals and more than 200 screw holes needing repair.  More than 30 square feet of painted surface in each mural would be destroyed.  Declaration of Daniel Hecht, Exhibit 7 and Declaration of David Schutz, Exhibit 6.

### III.  ARGUMENT

#### A.    LEGAL STANDARD

To obtain a preliminary injunction, a moving party must show: (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the movant's favor; and (4) that the public interest would not be disserved.  *See Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015) (internal citations omitted); *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011).

Kerson easily satisfies the requirements for injunctive relief.

First, Kerson is likely to succeed on the merits or, at a minimum, can show serious questions going to the merits of his claim, namely, that VLS's stated plans to destroy the Murals violate his rights under VARA.  Specifically, Kerson is likely to succeed in showing either that (a) VLS's stated plans are prejudicial to his honor or reputation, or (b) that VLS's stated plans to

destroy the Murals violate Kerson's rights, as the Murals are works of a recognized stature, or (c) both (a) and (b).  The leading VARA case in this Circuit is *Castillo v. G&M Realty*, 950 F.3d 155 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 363 (2020), affirming a damage award of $6.75 Million to artists whose aerosol paintings on building walls were whitewashed.

Second, without injunctive relief, Kerson will suffer irreparable harm.  If VLS is permitted to proceed with its stated plans, the Murals will be irrevocably destroyed.  Additionally, the destruction of Kerson's iconic work will permanently and prejudicially damage his honor and reputation.

Third, the balance of hardships tilts decisively in Kerson's favor.  If VLS proceeds as intended, the Murals will be destroyed, to Kerson's permanent detriment.  In contrast, a limited and temporary injunction – pending only the quick resolution of the merits of this action – will affect no unfair hardship on VLS.  The Murals have been in place for over 25 years.  Indeed, VLS has a ready "out" from under any injunctive remedy, as it need only agree to install a temporary curtain in front of the Murals while the merits of the action are litigated.  This temporary remedy will permit any of VLS's students who find the Murals objectionable to use Chase Hall without having to view the Murals.

Fourth, the narrow injunction sought by Kerson will serve the public interest by (a) the preservation of art work of recognized stature; (b) the protection of the honor or reputation of artists; and (c) promotion of settling issues of social concern without destroying an historical work of art.

## B.  KERSON SATISFIES THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION

### 1.  <u>Kerson Will Succeed on the Merits</u>

To establish a likelihood of success on the merits, a plaintiff "need not show that

success is certain, only that the probability of prevailing is 'better than fifty percent'". *BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) (*quoting Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). Not only can Kerson surpass this standard, he can also satisfy the alternative test of "sufficiently serious questions going to the merits to make them a fair ground for litigation" given that the balance of hardships stemming from any limited and temporary relief tips decidedly in his favor. *Benihana,* 784 F. 3d at 894-95.

> ### a.    *VARA Controls the Dispute*

This action arises under the Visual Artist Rights Act (VARA), 17 U.S.C. §106A, *et seq.* Congress passed VARA in 1990 as an amendment to the Copyright Act. VARA extends to the author of a work of visual art the legal protection of their moral rights of attribution and integrity. *Id.* The Copyright Act defines a work of visual art as "a painting, drawing, print, or sculpture, existing in a single copy," or "in a limited edition of 200 copies or fewer." 17 U.S.C. §101. Murals are works of visual art covered by VARA. *Carter v. Helmsley-Spear*, 71 F.3d 77, 84 (2d Cir. 1995), *cert. denied*, 517 U.S. 1208 (1996).

Since the passage of VARA, artists have had the right to:

(A) prevent any intentional distortion, mutilation, or other modification of a work of art which would be prejudicial to his or her honor or reputation, and any intentional distortion, mutilation, or modification of that work is a violation of that right. 17 U.S.C. §106A(a)(3)(A), and

(B) prevent any destruction of a work of recognized stature, and any intentional or grossly negligent destruction of that work is also a violation of that right. 17 U.S.C. §106A(a)(3)(B).

Kerson is likely to prevail under either (or both) prongs or, at minimum, raise sufficiently serious questions going to the merits to make them a fair ground for litigation given that the balance of hardships stemming from any limited and temporary relief tips decidedly in his favor.

VARA's protection expressly extends to permanent murals – that is, to works of recognized stature that have been "incorporated in or made part of a building in such a way that removing the work from the building will cause the destruction, distortion, mutilation, or other modification of the work." 17 U.S.C. §113(d)(1)(A). For murals incorporated in or made part of a building after VARA's enactment, as is the case here, the statute applies unless the artist and the building owner have executed a "written instrument" that "specifies that installation of the work may be subject to destruction, distortion, mutilation, or other modification, by reason of its removal." 17 U.S.C. §113(d)(1)(B). Here, the Murals that are the subject of this action are incorporated in Chase Hall in such a way that removal will cause their destruction, and Kerson has not acquiesced to the Murals' removal.

17 U.S.C. §113(d)(2) provides a further exception to the rights conferred by 17 U.S.C. §106A whereby a work of visual art which is a part of such building can be removed from the building without the destruction, distortion, mutilation, or other modification of the work, and provided that the building owner complies with certain notice provisions. *Id.* However, because these Murals cannot be removed without destroying, distorting, mutilating or otherwise modifying them, this exception does not apply.

> **b.** *As Author of the Murals, Kerson Has the Rights Conferred by VARA*

With the passage of VARA, authors of a work of visual art have the rights of attribution, *e.g.*, to claim authorship of a work, and integrity, and the artist's right to prevent any intentional distortion, mutilation, or other modification of a work which would be prejudicial to his or her

honor or reputation. 17 U.S.C. §106A(a)(3)(A).  The statute further grants the artist the right to prevent the destruction of a work of recognized stature.  17 U.S.C. §106A(a)(3)(B).  The present action involves both the right of integrity and the right to prevent the destruction of the Murals whose stature is widely recognized.

Finally, the artist's rights conferred by VARA are distinct from any ownership of any copy of the work or of a copyright or any exclusive right under a copyright in that work.  17 U.S.C. §106A(e)(2).  In this case, Kerson is the author of the Murals, and since they were created in 1994, the provisions of VARA therefore control; the fact that the Murals are physically located in a VLS building is irrelevant, as the rights under VARA do not require ownership of the work.  *Id.*  Accordingly, Kerson has standing to assert his VARA rights pursuant to both prongs of 17 U.S.C. §106A(a)(3).

      *c.*     ***The Murals are Works of Recognized Stature***

To prevent the destruction of a work pursuant to 17 U.S.C. §106A(a)(3)(B), a plaintiff only needs to show that the work is of a recognized stature.  The Murals at issue in this action clearly are of such a recognized stature.  The leading case in this circuit addressing VARA in general and the "recognized stature" issue specifically is *Castillo v. G&M Realty,* 950 F.3d 155 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 363 (2020).  In *Castillo*, the Court had to determine whether aerosol art painted on the walls of warehouse buildings met this standard.  Despite the fact that these works, at least in part, were temporary, the Court concluded that they did.  *Id.* at 166-167.

The *Castillo* Court found that a work is of recognized stature when its high quality, status, or caliber has been acknowledged by the relevant community, typically comprised of art historians, art critics, museum curators, gallerists, prominent artists, and other experts.  *Id.* at

166 (*quoting Carter v. Helmsley-Spear, Inc.*, 861 F. Supp. 303, 324-235 (S.D.N.Y. 1994), *aff'd in part*, *vacated in part*, *rev'd in part*, 71 F.3d 77; *see also Martin v. City of Indianapolis*, 192 F.3d 608, 612 (7th Cir. 1999)).  Moreover, a work's high quality, status, or caliber is its stature, and the acknowledgement of that stature speaks to the work's recognition.  *Id.* at 166

     *Castillo* further found that "recognized stature" is necessarily a fluid. concept.  *Id.*  Thus, for example, a "poor" work by a highly regarded artist – *e.g.*, any work produced by Monet – nonetheless merits protection from destruction under VARA.  This approach helps to ensure that VARA protects "the public interest in preserving [the] nation's culture."  *Id.* at 166 (*quoting Carter*, 71 F.3d at 81).

     *Castillo* cautioned that the personal judgment of the court is not the determinative factor in the court's analysis, being mindful of Justice Holmes's cautionary observation that "[i]t would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of [visual art]."  *Id.* at 116, (*quoting Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 251 (1903); *accord Pollara v. Seymour,* 344 F.3d 265, 271 (2d Cir. 2003) ("We steer clear of an interpretation of VARA that would require courts to assess the worth of a purported work of visual art.").  For that reason, aside from the rare case where an artist or work is of such prominence that the issue of recognized stature need not be tried, expert testimony or substantial evidence of non-expert recognition will generally be required to establish recognized stature. Here, there is such evidence in the form of the Declarations of Skoglund, Schutz, and Hecht, Exhibits 5 to 7.

     If anything, this is an easier case than *Castillo*, which involved works that, in part, were temporary.  By comparison, this action involves a work that has been affixed to walls for over 26 years. They have achieved nationwide recognition since their installation in 1994 by experts and

non-experts alike, and have been the subject of an acclaimed Artist Book that has been purchased by prominent public and university libraries nationwide.  Kerson Dec. at ¶ 20.  The Murals thus clearly meet the *Castillo* standard, and Kerson has the right pursuant to 17 U.S.C. §106A(a)(3)(B) to prevent VLS's stated plan to destroy them.

> ### d.    *VLS's Stated Plan to Permanently Cover the Murals Will be Prejudicial to Kerson's Honor or Reputation*

17 U.S.C. §106A(a)(3)(A) grants the artist the right to prevent any intentional distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation.  Such is the case here. VLS's stated intention to permanently cover the Murals with acoustic tile clearly is a distortion, mutilation, or other modification of the Murals.  VLS's prior plan to "whitewash" the Murals (as in *Castillo*) also would violate this sub-section.

VARA recognizes that, unlike novelists or composers, for example, visual artists depend on the integrity of the physical manifestations of their works.  Artists' moral rights "spring from a belief that an artist in the process of creation injects his spirit into the work and that the artist's personality, as well as the integrity of the work, should therefore be protected and preserved." *Carter*, 71 F.3d at 81 (*cited with approval* in *Castillo at* fn. 1).

In determining what would be 'prejudicial to the artist's honor and reputation," courts will consider whether such alteration would cause injury or damage to the artist's good name, public esteem, or reputation in the artistic community.  *Carter v. Helmsley-Spear, Inc.*, 861 F. Supp. 303, 323 (S.D.N.Y. 1994).

Kerson has attained a reputation of a pre-eminent muralist.  He is widely recognized as an artist who uses his art to promote the struggle for social justice for all people.  Indeed, the works associated most closely with Kerson's artistic mission are the very Murals that are the subject of this action.  Kerson Declaration at ¶ 9.  VLS's plan to permanently cover up the Murals, if

permitted to proceed, will send the clear message to the art world and general public that Kerson's Murals are offensive and unworthy to be viewed.  Not only will this denigrate the value of the work itself, it also will undoubtably tarnish Kerson's reputation as an artist committed to progressive causes. As a result, VLS's stated plans, if permitted to proceed, would be extremely prejudicial to Kerson's reputation and honor.

**2.** <u>**Kerson Will Suffer Irreparable Harm if the Murals are Permanently Covered with Acoustic Panels or Removed**</u>

In order to be entitled to preliminary injunctive relief, a plaintiff must show that he will suffer irreparable harm if a preliminary injunction is not granted.  Irreparable harm generally is presumed in the copyright context when the movant establishes a *prima facie* case of copyright infringement.  *See, e.g., Bourne Co. v. Tower Records, Inc*., 976 F.2d 99, 101 (2d Cir. 1992) (*quoting Video Trip Corp. v. Lighting Video, Inc.* 866 F.2d 50, 51–52 (2d Cir. 1989).  VARA is an amendment to the United States Copyright Act.

VLS has notified Kerson that it plans to cover the Murals with acoustical panels that will be firmly affixed to the wall structure.  If VLS proceeds with this action, it will irrevocably damage the Murals.  Hecht and Schutz Declarations, Exhibits 7 and 6.

Kerson has established, at minimum, a *prima facie* case that he is entitled to claim the rights set forth in 17 U.S.C. §§ 106A and 113(d), to wit, he is a recognized artist, the Murals are a work of recognized stature, and the Murals will be irrevocably damaged.  As such, Kerson is entitled to the presumption of irreparable harm generally available in cases of copyright infringement.  *See Carter v. Helmsley Spear, Inc.,* 852 F. Supp. 228 (S.D.N.Y. 1994); *cf. Bourne Co.*, 976 F.2d. at 101.

Moreover, the rights granted to artists by VARA go beyond economic rights to include the rights which protect the artist's personal association with his or her work.  Kerson's honor and

reputation could not be made whole by an award of mere money damages.  Absent injunctive relief, once the Murals are destroyed, this action cannot be effectively reversed.  If the Murals are altered or destroyed during the pendency of this action, Kerson will be left without a satisfactory remedy if he should ultimately prevail on the merits.  Thus, Kerson will be irreparably harmed absent preservation of the *status quo*.

**3.**      **The Balance of Equities Tips in Favor of Maintaining the Murals in their Present Condition**

The balance of hardships in this case clearly favors keeping the Murals in their present condition.  VLS's plan to cover the Murals by permanently affixing acoustical panels thereto is irreversible, and removal of the acoustical panels will cause permanent damage.  On the other hand, a temporary solution, such as placing a curtain before the Murals, will maintain the condition of the Murals and shield them from the view of students who may consider them offensive.

In the unlikely event that VLS should ultimately prevail, it will still be able to proceed with its stated plans.  VLS will, therefore, suffer no harm as a result of maintaining the Murals in their current state.

**4.**      **The Public Interest is Benefitted in Maintaining the Murals**

If the Murals are permanently covered up or removed, the civic and art community will be deprived of a historical, cultural, and social piece of visual art.    Although the presentation of the darkest chapter of this country's history may be uncomfortable to some, it is preferable to come to terms with it rather than to literally attempt to whitewash it.

The Murals may also serve as the basis for an educational experience that examines the themes displayed therein and serve to alleviate rather than inflame the racial divisions that still permeate our society.

Respectfully submitted,

THE PLAINTIFF

SAMUEL KERSON

By: *Steve Hyman*

Steven J. Hyman (2097)
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Phone (212) 448-1100
Fax (212) 448-0066
shyman@mclaughlinstern.com
*Attorneys for Plaintiff*

By: *Richard Rub*

Richard I. Rubin (7012)
RUBIN, KIDNEY, MYER & VINCENT
237 North Main Street, Suite 3
Barre, Vermont 05641
Phone: (802) 479-2514
Fax: (802) 479-2516
rrubin@rkmvlaw.com
*Attorneys for Plaintiff*

Date:   January 20, 2021